UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BOMAG AMERICAS, INC.,

       Plaintiff,

v.                                   Case No. 25-cv-12931
                                      HON. MARK A. GOLDSMITH

BEEMAC, INC.,

       Defendant.

_____/

## OPINION & ORDER DENYING DEFENDANT BEEMAC, INC.'S MOTION TO DISMISS AND/OR TRANSFER (Dkt. 7)

Plaintiff Bomag Americas, Inc. brings this action against Defendant Beemac, Inc. for breach of contract and violation of the Carmack Amendment, 49 U.S.C. § 14706, related to damaged cargo for which Bomag alleges Beemac is responsible. Before the Court is a motion to dismiss and/or transfer by Beemac (Dkt. 7).[1] For the reasons that follow, the Court denies the motion.

## I.    BACKGROUND

Bomag's complaint alleges the following facts. In 2022, Beemac signed a Carrier Terms and Conditions Agreement with Argus Logistics, LLC, which is Bomag's third-party logistics provider. Compl. ¶ 17; Carrier Terms and Conditions at PageID.20 (Dkt. 1-1).[2] The Carrier Terms and Conditions states that Argus may arrange transportation services on behalf of its clients with

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing also includes Bomag's response (Dkt. 9) and Beemac's reply (Dkt. 12).

[2] The Court may consider exhibits attached to the complaint when evaluating a motion to dismiss. See Williams v. CitiMortgage, Inc., 498 F. App'x 532, 536 (6th Cir. 2012).

Beemac.  Carrier Terms and Conditions at PageID.20.  Transportation services are "arranged through bills of lading or similar methods," the resulting document is called a "Transportation Order."  Compl. ¶ 18; Carrier Terms and Conditions at PageID.20.  If Beemac accepts a Transportation Order, the Carrier Terms and Conditions agreement attaches.  Compl. ¶ 19; Carrier Terms and Conditions at PageID.20.

Beemac signed a bill of lading to transport Bomag's cargo, worth $626,360.80, from Ridgeway, South Carolina to Butte, Montana.  Compl. ¶¶ 20, 32; Bill of Lading at PageID.27–29 (Dkt. 1-1).  Without obtaining prior written consent from Bomag, Beemac brokered the shipment to another carrier, A2A.  Compl. ¶ 34; 5/30/25 Ltr. at PageID.113 (Dkt.1-2).  The cargo was damaged during transit.  Id. ¶ 35; 3/3/25 Bomag Email at PageID.86 (Dkt. 1-2).  Through Argus, Bomag reported the incident to Beemac, who confirmed receipt of the claim the same day.  Compl. ¶ 37; 3/4/25 Beemac Email at PageID.88 (Dkt. 1-2).

Bomag contacted Beemac several times related to its damaged cargo.  Compl. ¶ 38.  On April 2, 2025, Beemac told Bomag there was no insurance for the damaged cargo.  Compl. ¶ 39; 4/2/25 Email at PageID.90 (Dkt. 1-2).  On April 9, 2025 A2A's insurance company contacted Bomag offering $250,000 to resolve the claim.  4/9/25 Ltr. at PageID.99–100 (Dkt. 1-2); Compl. 43.  After A2A's offer, Beemac confirmed to Bomag that there was no other coverage available and that $250,000 would be the final offer for the claim.  Compl. ¶ 44; 4/21/25 Email at PageID.104 (Dkt. 1-2); 5/5/25 Email at PageID.108 (Dkt. 1-2).  Bomag seeks to recover the remaining $373,360.80 that it alleges Beemac still owes, plus an additional $25,500 in expenses that it accrued when responding to the damaged cargo.  Compl. ¶¶ 42, 47.

The Carrier Terms and Conditions agreement contains several provisions that Beemac is alleged to have breached.  Section 11 states that Beemac will be liable to Bomag for the "full actual

2

loss, damage, or injury to goods occurring while in the custody, possession, or control" of Beemac. Compl. ¶ 21; Carrier Terms and Conditions at PageID.22.  Section 11 also states that Beemac will "be liable for reasonable expenses incurred in mitigation of damages, including inspection, sorting, segregating, refurbishing, repackaging, and reshipping fees or expenses."  Compl. ¶ 22; Carrier Terms and Conditions at PageID.22.

Section 15 of the Carrier Terms and Conditions agreement states that "[a]ll Transportation Orders shall be through bills of lading to the ultimate destination" and that Beemac is liable for "loss, damage, or delay" "regardless of any separate agreements entered into by [Beemac] with connecting carriers, brokers, subcontractors, cartage agents, or third parties."  Compl. ¶¶ 23–25; Carrier Terms and Conditions at PageID.22 (punctuation modified).  Section 15 also provides that Beemac cannot "interline or use other motor carriers or brokers" without Bomag's "prior written consent."  Carrier Terms and Conditions at PageID.22 (punctuation modified); Compl. ¶ 25.  Even if Bomag provides prior written consent for Beemac to use a subcontractor, Beemac still "continue[s] to be fully liable for any loss, damage, or delay to the [s]hipment."  Carrier Terms and Conditions at PageID.22; Compl. ¶ 27.

Section 16 of the Carrier Terms and Conditions agreement requires Beemac to have insurance, and "keep [it] in force continuously" for a period of one year after the expiration of the Carrier Agreement.  Compl. ¶ 28; Carrier Terms and Conditions at PageID.22.  Beemac must have and maintain $1,000,000 in commercial general liability insurance, including blanket contractual coverage, for bodily injury and property damage.  Carrier Terms and Conditions at PageID.22; Compl. ¶ 29.  Beemac also must have "primary cargo insurance in an amount equal to the full value of the maximum quantity of goods expected to be transported at any one time under the Carrier Agreement…."  Carrier Terms and Conditions at PageID.22; Compl. ¶ 30.

Section 25 contains a forum selection clause requiring litigation of disputes related to the agreement be instituted in the Eastern District of Michigan.  Carrier Terms and Conditions at PageID.24; Compl. ¶ 14.

Bomag filed this action in Michigan's Oakland County Circuit Court, from which it was removed to this Court.  The complaint alleges breach of contract based on Beemac subcontracting the shipment of its cargo to A2A, failing to maintain adequate insurance, and refusing to pay for damage related to the damaged cargo.  Compl. ¶¶ 52–55.  It also alleges a violation of the Carmack Amendment, which governs liability for damaged goods during interstate shipment of property. Id. ¶¶ 62–71.

## II.    ANALYSIS[3]

Beemac's motion to dismiss and/or transfer argues that (i) the Court does not have personal jurisdiction over Beemac, (ii) venue is improper; (iii) Bomag failed to join A2A as an indispensable party; and (iv) the Carmack Amendment preempts Bomag's breach of contract claim.  Mot. at PageID.153–164.

For the reasons set forth below, the Court concludes that it has personal jurisdiction over Beemac; that venue is proper in the Eastern District of Michigan; that A2A is not an indispensable party; and that the Carmack Amendment does not require dismissal of Bomag's breach claim.

### A.  Personal Jurisdiction

---

[3] To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  The plausibility standard requires courts to accept the alleged facts as true and to make all reasonable inferences in favor of the plaintiff.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Beemac argues that that Bomag's asserted basis for personal jurisdiction—the forum selection clause—is not enforceable because there is no contract between Beemac and Bomag. Mot. at PageID.153–157.

Parties may consent to the personal jurisdiction of a court via a forum-selection clause. Preferred Cap., Inc. v. Assocs. in Urology, 453 F.3d 718, 721 (6th Cir. 2006). There is a forum selection clause contained in Section 25 of the Carrier Terms and Conditions agreement. It states that "[a]ny claim, dispute, or lawsuit arising directly or indirectly out of the Carrier Agreement shall be litigated…in the United States District Court for the Eastern District of Michigan." Carrier Terms and Conditions at PageID.24; Compl. ¶ 14. Bomag argues that this provision gives the Court personal jurisdiction over Beemac. Resp. at PageID.208.

Beemac counters by stating that it did not consent to jurisdiction pursuant to Section 25 because it did not sign the bill of lading, and thus the Carrier Terms and Conditions agreement did not attach. Mot. at PageID.153. Beemac advances two arguments in support of its position: (i) the signature on the bill of lading is not the signature of any of its employees, and (ii) "Beemac Logistics, LLC," not Beemac, Inc., should have been listed as the carrier, as Beemac Logistics was the entity that brokered transportation of Bomag's cargo to A2A. Id. at PageID.155–157. Beemac provides an affidavit from its Director of Safety and Compliance in support.

At the motion to dismiss stage, the Court must accept as true the non-moving party's factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Bomag's complaint states that Beemac signed the bill of lading. Compl. ¶ 20. Beemac's affidavit to the contrary is, therefore,

not appropriate for the Court to consider.[4]  The identity of the signer and disagreement over which Beemac entity should have been identified as the carrier must await factual development.[5]

Because the challenge to the forum selection clause fails, Beemac's challenge to personal jurisdiction fails.[6]

### B.  Venue

Beemac argues that if the Court does not dismiss the case against it, the Court should alternatively transfer this matter to the Western District of Pennsylvania.  Mot. at PageID.157. Beemac argues that the forum selection clause, which states that disputes should be litigated in the Eastern District of Michigan, in the Carrier Terms and Conditions agreement should be given "no weight" because Beemac "never agreed" to it and because Bomag is not a Michigan resident.  Mot. at PageID.159.

As discussed, at this stage, Bomag has sufficiently alleged that Beemac signed the bill of lading, which incorporated the Carrier Terms and Conditions agreement containing the forum

---

[4] Courts may consider matters outside the pleading and convert a Rule 12 motion into a Rule 56 motion.  See F.R.Civ.P. 12(d).  Alternatively, courts may exclude such materials and preserve the motion as a test of the pleadings.  Id.  The Court chooses the latter approach and excludes consideration of the affidavit.  Converting the motion to a summary judgment motion would unduly delay proceedings, as discovery on the issue would necessarily have to be granted before ruling on the motion.  Further, the actual signor of the bill of lading may not be dispositive because Bomag has another theory of acceptance.  See n. 5.

[5] Bomag argues that even if Beemac did not sign the bill of lading, there is still a valid contract between Bomag and Beemac because Beemac's bid on its shipment in Argus's Transportation Management System (TMS) and acceptance of the shipping order "was an unequivocal act sufficient to manifest an intent to be bound by the offer."  Resp. at PageID.209 (punctuation modified).  Beemac's actions, even without signing the bill of lading, could manifest acceptance of an offer.  See Pakideh v. Franklin Com. Mortg. Grp., Inc., 540 N.W.2d 777, 781 (Mich. Ct. App. 1995) ("As a general rule, assent to an offer may be indicated by acts as well as by words.").  At the motion to dismiss stage, this position is sufficiently alleged.

[6] Beemac's additional arguments regarding lack of contacts with Michigan are irrelevant, given the sufficiency of the allegations regarding consent to the forum selection clause.

selection clause. "A forum selection clause should be upheld absent a strong showing that it should be set aside." Wong v. PartyGaming Ltd., 589 F.3d 821, 828 (6th Cir. 2009). When evaluating the enforceability of a forum selection clause, the court must analyze: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." Id.

Beemac does not address any of these factors in its briefing. Instead it argues that the Court should evaluate venue under the traditional forum non conveniens analysis which evaluates "the convenience of the parties and various public-interest considerations." Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 62 (2013). This is the incorrect test. Also, even under this test, the presence of a forum-selection clause in the parties' contract changes this analysis, as "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." Id. at 63 (punctuation modified).

There are no allegations that the Carrier Terms and Conditions agreement was obtained by fraud, duress, or other unconscionable means. Nor does the Court see how it would be ineffective or unfairly handle the case. While Beemac asserts, when evaluating the private interest factors under the traditional forum non conveniens analysis, that there are no potential witnesses in Michigan, implying that it is inconvenient to challenge Bomag's suit here, witness inconvenience is not enough to warrant transferring the case. See Performance Contracting, Inc. v. DynaSteel Corp., No. 12-10165, 2012 WL 1666394, at *4 (E.D. Mich. May 9, 2012) ("[I]nconvenience to the defendant is not established by citing the number of witnesses for the plaintiff who live outside the district where the suit was begun. . . .") (punctuation modified). Beemac's transfer arguments are unpersuasive.

### C.  Indispensable Party

As another alternative, Beemac argues that the case should be dismissed because Bomag failed to join A2A in this lawsuit as an indispensable party.  Mot. at PageID.160–162.

The first step to determining whether a case should be dismissed for failure to join an indispensable party is determining whether the "person or entity is a necessary party." Glancy v. Taubman Ctrs., Inc., 373 F.3d 656, 666 (6th Cir. 2004).  A party is necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Beemac asserts that A2A meets both of the requirements of Rule 19(a)(1).  Mot. at PageID.161.  As for subsection A, Beemac argues that Beemac Logistics—an entity distinct from Beemac—brokered the cargo at issue with A2A, entered into the Transportation Order with A2A, and secured the promise that A2A would assume liability for any loss, damage, or delay.  Id. Beemac points to the complaint in the Western District of Pennsylvania case, filed against A2A by Beemac Logistics, which seeks indemnity based on  A2A being "contractually obligated under the Transportation Agreement to indemnify Beemac Logistics and 'its customers', i.e.[,] Bomag, for any claims and damages." Id. at PageID.161–162

As Bomag notes, Beemac's indemnity relationship with A2A is not relevant to Bomag's claims in this case.  Resp. at PageID.216.  "The 'complete relief' provision of Rule 19 relates to

8

those persons already parties and does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible." Intercept Sec. Corp. v. Code-Alarm, Inc., 164 F.R.D. 215, 217 (E.D. Mich. 1995) (punctuation modified). "[I]t is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Id. (punctuation modified). The instant case addresses only whether Bomag can be made whole by a recovery against Beemac; it need not address whether Beemac can be made whole by a recovery against A2A. So A2A is not a necessary party.

Nor is it indispensable. Beemac's argument is that, without A2A, it would be "subject to a substantial risk of incurring inconsistent obligations." Mot. at PageID.162. But Bomag is not suing A2A in the instant action. Nor is Beemac suing A2A for indemnity in the Western District of Pennsylvania action; Beemac Logistics is. So Beemac will not be subject to inconsistent obligations. A2A is neither a necessary nor indispensable party. There has been no improper failure to join.

### D. Carmack Preemption

Beemac's last argument is that, assuming that Bomag's allegations that Beemac was a carrier are true, Bomag's breach of contract claim against it is preempted by the Carmack Amendment and should be dismissed. Mot. at PageID.163–164.

The Carmack Amendment "restricts carriers' ability to limit their liability for cargo damage" by making carrier fully liable "unless the shipper agreed to some limitation in writing." Exel, Inc. v. S. Refrigerated Transp., Inc., 807 F.3d 140, 148 (6th Cir. 2015). The Carmack Amendment "fully preempt[s] state law concerning the liability of interstate rail and road carriers." CNA Ins. Co. v. Hyundai Merchant Marine Co., Ltd., 747 F.3d 339, 356 n.17 (6th Cir. 2014).

Bomag argues that its breach of contract claim against Beemac should not be dismissed at this stage in the proceeding because it is unclear whether Beemac acted as a carrier or as a broker. Resp. at PageID.220.  Bomag pled facts alleging that Beemac was a carrier and a broker in its complaint.  See Compl. ¶¶ 19, 34.  The Carmack Amendment defines carrier as "a person providing motor vehicle transportation for compensation."  49 U.S.C. § 13102(14).  A broker is defined as "person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."  49 U.S.C. § 13102(2).  If Beemac is a carrier, the Carmack Amendment would preempt the breach claim; if it is a broker, then the Amendment may not.

At this stage in the proceeding, the Court agrees with Bomag.  "The Sixth Circuit has not definitively ruled on whether the Carmack Amendment's liability provisions apply to brokers." RPM Freight Sys., LLC v. K1 Express, Inc., 691 F. Supp. 3d 804, 812 (E.D. Mich. 2023) (punctuation modified).  Courts have found that other claims, like breach of contract, may be pursued against brokers.  See e.g., Rohr, Inc. v. UPS-Supply Chain Sols., Inc., 939 F. Supp. 2d 1041, 1055, n. 26 (S.D. Cal. 2013) ("While Carmack does not apply to brokers, it does not preempt state law claims against brokers." (punctuation modified)); Com. Union Ins. Co. v. Forward Air, Inc., 50 F. Supp. 2d 255, 258 (S.D.N.Y. 1999) ("[v]arious courts have implicitly recognized that brokers may still be liable on various causes of action outside of the Carmack Amendment"); Byrton Dairy Products, Inc. v. Harborside Refrigerated Serv., Inc., 991 F.Supp. 977, 984 (N.D. Ill.1997) (upholding breach of contract claim against broker).

"[T]he Federal Rules of Civil Procedure permit pleading in the alternative and even the pleading of inconsistent claims. Fed. R. Civ. P. 8(e)(2)."  Son v. Coal Equity, Inc., 122 F. App'x

797, 802 (6th Cir. 2004).  Given that at this stage it is unclear whether Beemac was a carrier or a broker, the Court will allow both Bomag's Carmack Amendment claim and its breach of contract claim to continue.

### III.   CONCLUSION

For the reasons explained above, the Court denies Beemac's motion to dismiss (Dkt. 7).

**SO ORDERED.**

Dated: May 13, 2026                                    s/Mark A. Goldsmith
Detroit, Michigan                                      MARK A. GOLDSMITH
                                                       United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 13, 2026.

                                   s/Joseph Heacox
                                   JOSEPH HEACOX
                                   Case Manager

11